1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PAMELA MCSWAIN, )
                              )
              Plaintiff,      )            Case No. 2:15-cv-01321-GMN-GWF
                              )
vs.                           )            **ORDER**
                              )
UNITED STATES OF AMERICA,     )
                              )
                              )
              Defendant.      )
_____)

    This matter is before the Court on Plaintiff's Motion to Compel Discovery Responses and Stay Discovery Period (ECF No. 23), filed on July 21, 2016.  Defendant United States filed its Opposition (ECF No. 26) on August 8, 2016.  Plaintiff filed her Reply (ECF No. 28) on August 22, 2016.  The Court conducted a hearing in this matter on August 22, 2016.

**BACKGROUND**

    Plaintiff filed her complaint pursuant to the Federal Tort Claims Act ("FTCA") on July 13, 2015.  *Complaint (ECF No. 1).*  Plaintiff alleges that on September 29, 2014 she attempted to board a flight at McCarran International Airport in Las Vegas, Nevada with her "small emotional support animal ('ESA'), a dog named 'Chief.'"  ¶ 10.  While attempting to follow the directions of TSA officers as to where she should go to, Plaintiff observed a TSA security dog that was on its hind legs, pulling on the leash maintained by its handler, and barking in a threatening manner.  Plaintiff reached down to pick-up her dog.  As she stood up, she was attacked from behind by the TSA dog which knocked her and her dog to the ground.  Plaintiff fell on her dog, injuring his leg. ¶¶ 12-13.  Plaintiff alleges that she sustained injuries to her head, neck, arms and back regions.  ¶ 14.  Plaintiff alleges that Defendant was

negligent in either failing to properly leash its security dog or in failing to provide the handler with appropriate training.  ¶ 18.

Defendant filed its answer on November 25, 2015.  *Answer (ECF No. 12).*  On March 4, 2016, the Court granted an extension of the scheduling order which provided that expert disclosures were due on July 22, 2016, rebuttal expert disclosures were due on August 22, 2016 and the discovery cutoff date was September 20, 2016.  *Order on Stipulation (ECF No. 16).*  On May 3, 2016, Plaintiff served requests for production of documents.  Defendant served its responses to the requests for production on July 8, 2016.  *Motion (ECF No. 23), pg. 2:19-20.*

On June 17, 2016, Defendant filed its Motion for Partial Dismissal or, in the Alternative, Partial Judgment on the Pleadings (ECF No. 17).  Defendant argues that Plaintiff's alternative claim based on negligent training of the TSA employee is barred by the United States' sovereign immunity from claims based on its exercise or performance, or failure to exercise or perform, a discretionary function or duty. *Motion (ECF No. 23), pgs. 4–5.*  In response to the motion, Plaintiff stated that her negligence claim is based on Defendant's failure to properly leash its security dog.  Plaintiff  conceded "that the nature and extent of training provided to the TSA agent is not challengeable under the FTCA.  On the other hand, issues such as whether the TSA animal was properly leashed, including the manner in which it was leashed in accordance with the government's own policies, rules and regulations, do not implicate considerations involving the discretionary function exception."  *Response (ECF No. 20), pg. 4.*

On July 21, 2016, one day before the expert witness disclosure deadline, Plaintiff filed the instant motion to compel discovery responses and stay the discovery period.  Plaintiff argues that she is not able to disclose an expert witness on liability until she obtains discovery responses from Defendant. Upon receipt of Plaintiff's motion, the Court entered a minute order setting this motion for hearing on August 22, 2016.  The minute order further stated that "[t]he expert disclosure deadline is stayed until the court reviews and considers Defendant's response, if any, to Plaintiff's motion."  *Minute Order (ECF No. 22).*  Following entry of the minute order, Plaintiff did not disclose any expert witnesses, including medical expert witnesses.  Although the minute order was broadly worded, Plaintiff's counsel's reading of the order as staying the disclosure of medical expert witnesses was unreasonable. Nothing in Plaintiff's motion stated that she was unable to disclose medical experts by the disclosure

1  deadline.

2       Defendant disclosed its liability expert witness on July 22, 2016. *Opposition (ECF No. 26),*

3  *Exhibit B.*  Defendant's expert, Kenneth Wallentine, states that he is a law enforcement officer and an

4  expert in the proper handling of law enforcement dogs.  Mr. Wallentine reviewed witness statements,

5  the TSA Canine Incident report, Defendant's Initial Disclosure Statement, Plaintiff's and Defendant's

6  written discovery responses, and video recordings from the airport surveillance cameras.  *Id. at*

7  *pgs.1–2.*  After noting that dogs are naturally social animals and are interested in other dogs, Mr.

8  Wallentine states that "Vadar's [the TSA security dog] behavior that can be seen on the surveillance

9  video does not show threat gestures.  Nor does TSA PSC Handler Fasciano report observing any

10  apparent threat gestures by Vadar.  Fasciano attempted to block Vadar's view of the other dog and

11  Fasciano spoke to Vadar to calm him.  Such a response was consistent with the actions of a reasonable

12  dog handler."  *Id. at pg. 3.*  Mr. Wallentine further states that the type of dog harness worn by the dog

13  "is a very commonly used working dog harness, adopted by hundreds of law enforcement agencies in

14  the United States.  Although it is conceivable that a dog could slip out of this type of harness, it is

15  physically very difficult, requiring that the dog suddenly back out of the harness, slipping head, ears,

16  chest and legs backward.  Though I have seen dogs in such harnesses back quickly, I have never seen a

17  dog successfully slip out of the harness.  Prior to learning of this incident, I was not aware of any dog

18  that ever slipped out of this type of harness."  *Id.*  The parties agree, however, that Vadar did get out of

19  his harness and attack Plaintiff and her dog.

20       Plaintiff moves to compel responses to the following requests for production of documents:

21       **Request for Production No. 6:** Provide copies of any documents used by
         TSA instructors throughout the duration of training to train TSA dog
22       handlers, including but not exclusive to training manuals, policy
         statements or guidelines (official or unofficial).

23
         **Request for Production No. 7:** Provide copies of any documents used by
24       TSA instructors throughout the duration of training to train TSA dogs,
         including but not exclusive to training manuals, policy statements or
25       guidelines (official or unofficial).

26       **Request for Production No. 8:** Provide copies of any documents
         detailing official TSA policy applicable throughout the duration of
27       training in handling occurrences such as the subject incident; to prevent,
         mitigate in the moment and ameliorate after the fact such crises.

28

3

1    Defendant objected to Requests 6-8 as "vague, overbroad, disproportional to the claims at issue

2    and implicates information that constitutes SSI as well as information that is nondiscoverable or

3    irrelevant to the claim at issue."  Based on this objection, Defendant withheld the "Transportation

4    Security Inspector Canine Manual, the Explosives Detection Canine Handler Course and Passenger

5    Screening Canine Handler Course Lesson Plans and Workbooks, and TSA's Standard Operative

6    Procedures pertaining to screening with canines."  *Motion (ECF No. 23), pgs. 4–5.*

7              **Request for Production No. 11:** Provide copies of any documents
                certifying and documenting each and every type of training that TSA
8              handler Raymond Fasciano and TSA canine have undergone.

9    Defendant objected to Request No. 11 on the same grounds as its objections to Requests 6-8.

10   Defendant produced certain documents, but stated that based on its objections, it had not searched

11   TSA's Canine Website System (CWS), which records ongoing, nearly daily training of all TSA canines

12   (to keep them alert and proficient for performance of their official duties).  *Id. at pg. 5.*

13             **Request for Production No. 13:**  Provide documents concerning any and
                all cases or complaints ever filed or lodged against the TSA nationally for
14             canine related incidents such as the subject incident.

15   Defendant objected to this request as vague and overly broad in scope of geography, subject

16   matter and time frame.  It also objected on the grounds that the request implicated information that

17   would be protected by the Privacy Act, 5 U.S.C. § 552a.  Defendant stated that without waiving its

18   objections, it "is not aware of a prior incident that is similar to the subject incident and involved Mr.

19   Fasciano or Vadar.  Defendant is not aware of any prior similar incidents at LAS involving TSA

20   canines."  *Id. at pg. 6.*

21             **Request for Production No. 23:** Produce the complete personnel file of
                Raymond Fasciano.
22

23             Defendant objected to this request on the grounds that it is vague, overly broad, and seeks

24   records that are nondiscoverable or irrelevant as well as protected from disclosure by the Privacy Act.

25   Without waiving its objections, Defendant referred to documents produced in response to Request No.

26   11, but withheld documents relating to Mr. Fasciano, including his eOPF and other records kept by

27   TSA regarding his employment and performance.  *Id. at pg. 6.*

28   . . .

4

1

**<u>DISCUSSION</u>**

2      Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

3 discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

4 proportional to the needs of the case, considering the importance of the issues at stake in the action, the

5 amount in controversy, the parties' relative access to relevant information, the parties' resources, and

6 the importance of the discovery in resolving the issues, and whether the burden and expense of the

7 proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be

8 admissible in evidence to be discoverable." *Roberts v. Clark County School District*, 312 F.R.D. 594,

9 601–04 (D. Nev. 2016) discusses the intent of the 2015 amendments to Rule 26(b) and the efforts made

10 by the Supreme Court and the Advisory Committee on Civil Rules to encourage trial courts to exercise

11 their broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage

12 discovery to accomplish the goal of Rule 1 "'to secure the just, speedy, and inexpensive determination

13 of every action and proceeding.'" *Id.* at 602.  The court discussed Chief Justice Roberts' 2015 Year-

14 End Report in which he stated that the changes to Rule 26(b) "'may not look like a big deal at first

15 glance, but they are.'" *Id.* at 603.  As quoted in *Roberts*, the Chief Justice's Year-End Report stated:

16           The 2015 amendments to Rule 26(b)(1) emphasize the need to impose
             "reasonable limits on discovery through increased reliance on the
17           common-sense concept of proportionality."  The fundamental principle of
             amended Rule 26(b)(1) is "that lawyers must size and shape their
18           discovery requests to the requisites of a case."  The pretrial process must
             provide parties with efficient access to what is needed to prove a claim or
19           defense, but eliminate unnecessary and wasteful discovery.  This requires
             active involvement of federal judges to make decisions regarding the
20           scope of discovery.

21      *Roberts*, 312 F.R.D. at 603.

22      Rule 26(b)(2)(C)(i) provides that on motion or on its own, the court must limit the frequency or

23 extent of discovery otherwise allowed by these rules or by local rule if it determines that the discovery

24 sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is

25 more convenient, less burdensome, or less expensive.  The starting point with respect to a motion to

26 compel discovery remains the relevance of the requested information.

27 . . .

28 . . .

5

1    **1.   <u>Request Nos. 6, 7, 8 and 11.</u>**

2    Defendant argues that Requests Nos. 6, 7, 8, and 11 are irrelevant because the Government is

3    immune from suit with respect to claims based on negligent training, supervision or retention.  Putting

4    aside, for the moment, the clear overbreth of these requests, the Court analyzes whether provisions in

5    training or instruction manuals relating to preventing TSA security dogs from attacking other dogs or

6    human beings, or from getting loose from their harnesses or leashes, are relevant to Plaintiff's

7    negligence claim.  In arguing that the requests are irrelevant, Defendant relies on the discretionary

8    function exception to its waiver of sovereign immunity with respect to tort claims.

9    In *United States v. Chadd*, 794 F.3d 1104, 1108 (9th Cir. 2015), the court notes that the

10   discretionary function exception "retains the United States sovereign immunity for '[a]ny claim . . .

11   based upon the exercise or performance or the failure to exercise or perform a discretionary function or

12   duty on the part of a federal agency or any employee of the Government, whether or not the discretion

13   involved is abused.' 28 U.S.C. § 2680(a)."  This exception "is designed to 'prevent judicial second-

14   guessing of legislative and administrative decisions grounded in social, economic, and political policy

15   through the medium of an action in tort.'"  *Id.* at 1108, citing *United States v. S.A. Empresa de Viacao*

16   *Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).  The government has the burden of

17   proving that the exception applies.  The court noted that the Supreme Court has established a two-step

18   process for evaluating whether a claim falls within the discretionary function exception:

19          First, a court examines whether the government's actions are
20   "discretionary in nature, acts that involv[e] an element of judgment or
     choice.'  *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267,
21   113 L.Ed.2d 335 (1991) (internal quotation marks omitted).  In making
     this examination, it is 'the nature of the conduct, rather than the status of
22   the actor, that governs whether the discretionary function exception
     applies in a given case." *Varig*, 467 U.S. at 813, 104 S.Ct. 2755.  "If
23   there is . . . a statute or policy directing mandatory and specific action, the
     inquiry comes to an end because there can be no element of discretion
24   when an employee has no rightful option but to adhere to that directive."
     *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal
25   quotation marks omitted).

26          Second, "even assuming the challenged conduct involves an element of
     judgment, it remains to be decided whether that judgment is of the kind
27   that the discretionary function exception was designed to shield."
     *Gaubert*, 499 U.S. at 322-23, 111 S.Ct. 1267 (internal quotation marks
28   omitted).  "The exception protects only government actions and decisions
     based on social, economic, and political policy."  *Miller v. United States*,

6

163 F.3d 591, 593 (9th Cir. 1998)  (internal quotation marks omitted). However, the exception "is not confined to the policy or planning level" and extends to "the actions of Government agents." *Gaubert*, 499 U.S. at 325, 323, 111 S.Ct. 1267.

*Chadd*, 794 F.3d at 1109.

In *Chadd,* the plaintiff's decedent was killed by a wild goat in the Olympic National Park. Although the Park Service had prior notice that the goat had attacked park visitors and employees, the court held that the government's decision not to remove or kill the goat fell within the discretionary function exception because there was no regulation or policy that mandated removal or destruction of the goat prior to the attack. The dissent argued that the government's conduct did not involve the exercise of a discretionary function, but instead amounted to a simple negligent failure to exercise due care for the safety of park visitors in the face of a known danger.  As both the majority and dissenting opinions in *Chadd* demonstrate, analysis of the regulations or policies at issue is necessary to determine whether the conduct falls within the scope of the agency's discretionary functions.  In this case, Plaintiff does not challenge the reasonableness of a clearly discretionary decision such as the TSA's decision to use dogs in airport security operations versus other possible security methods.  Although Defendant's rules or policies relating to the safe use of dogs in TSA security operations may involve the exercise of judgment or discretion, Plaintiff's discovery requests potentially encompass relevant mandatory TSA instructions, policies or procedures.

The determination of negligence in FTCA actions is governed by state law.  In *Wickliffe v. Sunrise Hospital, Inc.*, 766 P.2d 1322, 1325 (Nev. 1989), which involved a claim of negligent nursing care, the Nevada Supreme Court held that the trial court should have given the following jury instruction:  "In determining the adequacy of the care rendered to its patient, you may consider the defendant's own standards and whether or not the defendant conformed to its own standards."  Other state courts have similarly stated that evidence showing that a defendant violated its own safety procedures or standards is admissible to prove negligence.  In *Ponce v. Parker Fire Dist.*, 322 P.3d 197, 201 (Ariz.App. 2014), the plaintiff alleged that firefighters were negligent in not following the fire department's policies and procedures for using thermal imaging cameras to detect heat in building walls to prevent the recurrence of fire.  The court stated that "when a defendant has departed from rules of its

own making governing the conduct of its employees, a plaintiff may thereby demonstrate breach of an appropriate standard of care." *Roddey v. Wal-Mart Stores East, LP*, 784 S.E.2d 670, 675 (S.C. 2016) states that "[e]vidence of a company's deviation from its own internal policies is relevant to show the company deviated from the standard of care, and is properly admitted to show the element of breach." *Steinberg v. Lomenick*, 531 So.2d 199, 200 (Fla.App.3 Dist. 1988) states that rules made by a defendant to govern the conduct of employees are relevant evidence of the standard of care. In *Babcock v. The Chesapeake and Ohio Railway*, 404 N.E.2d 265, 275 (Ill.App. 1980), the court held that defendant's own rules governing the operation of its trains were admissible to prove the standard of care. TSA's training manuals, policy statements or guidelines relating to the prevention of unwarranted attacks on other dogs or human beings are relevant to the negligence claim in this case, and are therefore discoverable in the absence of some privilege that bars their disclosure.

As stated above, Plaintiff's requests for all TSA training manuals, policy statements or guidelines relating to TSA security dogs and handlers are clearly overbroad. The training manuals may contain confidential, sensitive information relating the detection of explosives.[1] Such information is not relevant to the issue in this case.[2] The Government states that the training materials requested by Plaintiff contain sensitive security information (SSI) which is protected from disclosure by federal law. Sensitive security information is "'information obtained or developed in the conduct of security activities . . . the disclosure of which TSA has determined would . . . [b]e detrimental to the security of transportation.'" *Ibrahim v. Department of Homeland Sec.*, 669 F.3d 983, 998 (9th Cir. 2012) (quoting 49 C.F.R. § 1520.5(a)(4). Section 525(a) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109–295, 120 Stat. 1355, 1382 (October 4, 2006), provides that information designated as SSI may be withheld from public disclosure by the Department of Homeland Security. Section 525(d) further states:

---

[1]The parties have not provided the Court with any specific information regarding the functions performed by the TSA security dogs. According to the TSA Official Website, the dogs are trained and used to detect explosives.

[2]According to Defendant's expert, Vadar did not make any "threat gestures" and TSA officer Fasciano reportedly did not observe "any apparent threat gestures." *Opposition (ECF No. 26), Exhibit B.*

That in civil proceedings in United States District Courts, where a party seeking access to SSI demonstrates that the party has substantial need of relevant SSI in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the information by other means, the party or party's counsel shall be designated as a covered person under 49 CFR Part 1520.7 in order to have access to the SSI at issue in the case, provided the overseeing judge enters an order that protects the SSI from unauthorized or unnecessary disclosure and specifies the terms and conditions of access, unless upon completion of a criminal history check and terrorist assessment like that done for aviation workers on the persons seeking access to SSI, or based on the sensitivity of the information, the Transportation Security Administration or DHS demonstrates that such access to the information for the proceeding presents a risk of harm to the nation.

*See also Ibrahim*, 669 F.3d at 999 (discussing the provisions of the law).

Section 525(d) also states that an order granting access to SSI shall be immediately appealable to the United States Court of Appeals, which shall have plenary review over both the evidentiary finding and the sufficiency of the order specifying the terms and conditions of access to the SSI in question. *Id.*

The language of Section 525(d) mirrors that of Rule 26(b)(3)(A)(ii) which provides that a party may discover relevant documents protected from disclosure by the work product doctrine if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Limiting Plaintiff's requests to training manuals, policy statements or guidelines relating to the prevention of unwarranted attacks on other dogs or human beings, including ensuring that the dogs are properly leashed or restrained, satisfies the substantial need requirement set forth in Section 525(d). If, in fact, the TSA has such rules or policies, they may be highly probative on the issue of whether the TSA officer in this case was negligent. Plaintiff cannot obtain the substantial equivalent of such information by other means. Although Plaintiff may be able to designate her own expert witness to testify that the TSA officer did not properly handle the dog, such testimony is unlikely to have the probative force of evidence showing that the officer violated TSA's own rules or policies for handling the dog.

Section 525(d) also provides that the party requesting the SSI or that party's counsel shall be designated as a covered person under 49 C.F.R. Part 1520.7 in order to have access to the SSI at issue, and may be required by the TSA to undergo and satisfy a security background check. Section 525(d)

9

also requires that the court enter an order that protects the SSI from unauthorized or unnecessary

disclosure and specifies the terms and conditions of access.  Consistent with Section 525(d), the Court

will enter a protective order providing that disclosure of the documents is restricted to plaintiff and/or

plaintiff's counsel and plaintiff's liability expert witness (if one is designated in this case), and may

only be used for purposes of this case.  Production shall also be subject to any necessary prior

background check that the TSA reasonably believes is necessary.  The Court directs the parties to meet

and confer regarding the submission of a stipulated protective order governing the production and use

of SSI in this litigation.[3]

### 2. Request No. 13.

Plaintiff has failed to provide a sufficient reason to compel Defendant to respond to Request No.

13 by producing documents "concerning any and all cases or complaints ever filed or lodged against the

TSA nationally for canine related incidents such as the subject incident."  Defendant has responded to

this request by stating that it is not aware any prior incidents involving the subject dog and TSA

handler, and that it is not aware of any similar prior incidents occurring at "LAS" which the Court infers

means McCarran International Airport.  Plaintiff argues that evidence regarding other incidents would

suggest that TSA had "knowledge of a problem which is potentially a breach of the duty of care.

Certainly, prior incidents involving the subject dog and TSA trainer would be relevant to the issue of

negligence.  Other incidents involving TSA dogs and handlers, occurring elsewhere in the country,

however, would only conceivably be relevant to establish a general failure to properly train TSA

security dogs and handlers, for which the Plaintiff has acknowledged no viable claim exists.  The fact

that different TSA dogs and different TSA officers were involved in a similar incidents on other

occasions, would not prove that the dog it in this instance was mishandled.  The Court therefore denies

Plaintiff's motion to compel further responses to Request No. 13.

### 3. Request No. 23:

Plaintiff's Request No. 23 seeks the production of the complete personnel file of Raymond

---

[3]If Defendant represents that there are no training manuals, policy statements or guidelines within the scope of this order, then submission of a protective order may not be necessary.

Fasciano, the TSA officer involved in the subject incident.  Neither in the request or in her motion to compel did Plaintiff attempt to limit the request to any specific type of information in the officer's personnel file.  Plaintiff argues that credibility of a witness is always relevant and that Officer Fasciano's personnel file may contain "important impeachment evidence." *Motion (ECF No. 23), pg*. 7.  Rule 608(b) of the Federal Rules of Evidence states that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness."  A party can only inquire into such incidents, if she knows of their existence.  If Officer Fasciano's personnel file contains information showing that he engaged in dishonest or untruthful conduct, then such records should be produced to Plaintiff.  This does not mean, however, that any type of employment violation or discipline is relevant.  For example, information that an employee was cited or disciplined for unexcused tardiness or absence from work is irrelevant and need not be produced.  On the other hand, information that the employee was cited or disciplined for giving untruthful information about being tardy or absent from work is relevant and should be produced.   Any production of documents pursuant to Request No. 23 may also be made subject to the stipulated protective order to be submitted by the parties.

### 4. Plaintiff's Request for Extension of Expert Witness Disclosure Deadlines.

Local Rule LR 26-4 states that a motion or stipulation to extend a deadline set forth in a discovery plan must be received no later than 21 days before expiration of the subject deadline.  Local Rule LR IA 6-1 states that a request made after the expiration of the specified period will not be granted unless the movant or attorney demonstrates that the failure to file the motion before the deadline expired was the result of excusable neglect.  In this case, Plaintiff filed the instant motion one day before the expiration of the expert witness disclosure deadline and it was therefore untimely under LR 26-4.  Plaintiff's counsel argues that in order to disclose an appropriate expert witness on liability, he needs to first obtain responses to the written discovery requests.  However, Plaintiff's counsel was aware at least 21 days prior to the expert disclosure deadline that he did not have such information. He therefore should have moved for an extension of the expert witness disclosure deadline at that time.

Because mandatory rules or policies relating to the safe use of dogs in TSA security operations is relevant to expert opinion testimony on liability, the Court would have granted the extension if it had been sought in a timely manner.

Defendant argues that it will be prejudiced if the Court extends the time for Plaintiff to disclose her liability expert witness because Plaintiff's expert will have the advantage of reviewing the opinions of Defendant's expert, Mr. Wallentine, in preparing his or her opinions.  Mr. Wallentine's expert opinions are fairly simple and straightforward and it is doubtful that any expert disclosed by Plaintiff will gain any advantage by having had the prior opportunity to review his report.  (Defendant's expert can also provide a rebuttal report to the opinions of Plaintiff's liability expert.)  If relevant mandatory rules or policies are disclosed by Defendant, then both parties' experts will likely render opinions in light of those rules or policies.  In the interest of resolving this case on the merits, and notwithstanding the untimeliness of Plaintiff's motion to extend the expert witness disclosure deadline, the Court will extend the deadline for Plaintiff to disclose an expert witness on liability pursuant to Rule 26(a)(2) until 10 days after Defendant supplements its response to Requests Nos. 6, 7, 8, and 11 in compliance with this order.

Plaintiff has not provided this Court with any reason for extending the deadline to disclose expert witnesses on damages.  Minute Order (ECF No. 22) was not intended to extend, and was not reasonably construed as extending, the deadline for disclosing medical experts which were not the subject of Plaintiff's motion.  Because Plaintiff has not provided good cause to extend the disclosure deadline with respect to medical experts, the Court will not extend the deadline with respect to such experts in this order.  Plaintiff may not disclose heretofore undisclosed medical expert witnesses unless she files motion demonstrating good cause for permitting her to do so, and the Court grants that request.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Discovery Responses and Stay Discovery Period (ECF No. 23) is **granted**, in part, as follows:

1.  Defendant shall produce TSA's training manuals, policy statements or guidelines relating to the prevention of unwarranted attacks on other dogs or human beings, including any manuals, policy statements or guidelines regarding the proper leashing or collaring of dogs.  Defendant shall also

produce documents in TSA Officer Fasciano's personnel file relating to citations or discipline for untruthfulness or dishonesty.  The documents produced pursuant to this order shall be subject to a protective order to be entered prior to Defendant's production of the documents.

2.  Within ten (10) days from the date of this order, the parties shall file a proposed protective order governing the disclosure and use of documents produced by Defendant that are either designated as sensitive security information (SSI), or which constitute private personal information.  If the parties cannot agree on the terms of the protective order then either party may file a motion for an appropriate protective order.

3.  The deadline for the Plaintiff to disclose an expert witness on the issue of liability is extended until ten (10) days from the date that Defendant produces documents pursuant to paragraph 1 of this order, or Defendant notifies Plaintiff that no such documents exist.  Defendant may disclose a rebuttal expert thirty (30) days after Plaintiff serves her liability expert witness disclosures.

4.  The discovery deadline will be extended until 30 days after Defendant's rebuttal expert disclosure is due.

4.  This matter is set for a status hearing on **Tuesday, September 13, 2016 at 10:30 a.m.** in LV Courtroom 3A to discuss the production of documents in compliance with this order, the entry of an protective order, and to set specific scheduling order deadlines.

DATED this 30th day of August, 2016.

_George Foley Jr._
_____
GEORGE FOLEY, JR.
United States Magistrate Judge

13